**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **Annette H. Ardis,** | ) | **Civil Action No.:** 3:26-cv-1302-SAL |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Financial Accounts Service Team, Inc.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1.     This is an action brought by Plaintiff, Annette H. Ardis, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (hereinafter "FCRA"), for actual and statutory damages, plus attorneys' fees, and costs for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* (hereinafter "FDCPA"), and for compensatory and punitive damages for the Defendant's violations of South Carolina common law set forth herein.

2.     The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.     Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent

1

consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681s-2(b), which are two of the cornerstone provisions of the FCRA.

5. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7.     This Court has Jurisdiction under 15 U.S.C. §1681p, 15 U.S.C. §1692, and 28 U.S.C. §1331.

8.     Venue is proper in the Columbia Division because the Plaintiff resides in Lee County, and the Defendant transacted business throughout South Carolina and in this division.

## PARTIES

9.     Plaintiff, Annette H. Ardis, is a resident and citizen of the State of South Carolina, Lee County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.     Defendant, Financial Accounts Service Team, Inc. (hereinafter "FAST"),  is a Tennessee corporation that may be served with process through its registered agent for service of process, Financial Accounts Service Team, Inc., 8202 Kingston Pike, Knoxville, TN 37919.  Defendant was in all respects and at all times relevant herein doing business in the state of South Carolina and in this division.

11.     Defendant FAST is a "debt collector" as that term is defined in 15 U.S.C. 1692a(6) and is regularly engaged in the collection of debts.

12.     Defendant FAST is a furnisher of information to multiple Consumer Reporting Agencies ("CRAs"), including Equifax, Experian, and TransUnion, in that they regularly report account data on consumer credit reports.

## FACTUAL ALLEGATIONS

13.     In 2019, Plaintiff first became the victim of identity theft and had accounts opened

in her name without her knowledge or permission.

14.     In 2020, Plaintiff filed a police report, filed an identity theft affidavit with the Federal Trade Commission, and placed a fraud alert on all of her credit reports.

15.     On or about March 30, 2020, Experian sent Plaintiff a postcard confirming a fraud alert had been placed on her Experian credit reports.

16.     On or about March 30, 2020, TransUnion sent Plaintiff a postcard confirming a fraud alert had been placed on her TransUnion credit reports.

17.     On or about March 31, 2020, Equifax sent Plaintiff a letter confirming the fraud alert had been placed on her Equifax credit reports.

18.     In 2024, Plaintiff began receiving debt collection letters in the mail for credit card accounts that did not belong to her.  This was extremely frightening and stressful to Plaintiff because she did not have or use credit cards, as she had always been adamant about only using cash or checks as forms of payment.

19.     In February 2025, worried that she was again the victim of identity theft, Plaintiff tried to obtain copies of her credit reports online.  Unfortunately, when Plaintiff tried to obtain a copy of her Equifax credit report, she was denied access.  When Plaintiff tried to obtain a copy of her TransUnion credit report, she could not answer the identity verification questions because the questions contained information known only to the identity thief.

20.     Subsequently, Plaintiff learned that the identity thief was living at 427 New Castle Road, Greenville, South Carolina.  Plaintiff also learned the thief paid an electricity bill for 427 New Castle with one of the fraudulent credit cards opened in Plaintiff's name.

21.     On or about February 7, 2025, Plaintiff called the credit reporting agencies to

request copies of her credit reports.

22.    On February 7, 2025, Plaintiff filed a police report with the Lee County Sheriff's Office.

23.    On February 7, 2025, Plaintiff also filed an Identity Theft Report with the Federal Trade Commission wherein Plaintiff provided the address used by the identity thief to open the fraudulent accounts.  Plaintiff also provided the police officer's name and report number for Plaintiff's police report.

24.    On or about February 25, 2025, TransUnion sent Plaintiff a letter stating it was unable to locate a credit report for Plaintiff based on the information she provided.  Plaintiff was asked to provide copies of two documents to verify her current address, Social Security number, and date of birth.

25.    Plaintiff immediately forwarded TransUnion a copy of her driver's license and her Social Security benefits statement.

26.    On or about March 16, 2025, TransUnion sent Plaintiff a second letter requesting proof of her current mailing address.

27.    On or about March 24, 2025, Plaintiff mailed TransUnion a completed Alert Request Form along with a copy of her driver's license and Verizon telephone bill.

28.    On or about March 29, 2025, TransUnion sent Plaintiff a postcard informing her a fraud alert had been added to her TransUnion credit report.

29.    On April 2, 2025, TransUnion received Plaintiff's Alert Request Form and proof of identity and address, but never provided Plaintiff with a copy of her TransUnion credit

30.    On or about June 13, 2025, frustrated that she had still not been able to obtain a copy

of her TransUnion credit report, Plaintiff sent a dispute letter to TransUnion ("First TransUnion Dispute").  In her letter, Plaintiff specifically informed TransUnion that she had never received a copy of her TransUnion credit report even after mailing TransUnion proof of her identity.  Plaintiff informed TransUnion she had been the victim of identity theft and fraud, and requested TransUnion remove the fraudulent Account from appearing on her credit report.  Plaintiff provided TransUnion her address, Social Security number, date of birth, and a copy of her driver's license.  Additionally, Plaintiff requested TransUnion send her a complete copy of her credit report. TransUnion received Plaintiff's dispute on June 18, 2025.

31.    On or about June 18, 2025, TransUnion sent Plaintiff a letter regarding Remedying the Effects of Identity Thief and setting out some of her rights under the Fair Credit Report Act.

32.    On or about July 9, 2025, TransUnion sent Plaintiff its Investigation Results and, five months after Plaintiff first requested it, *finally* provided Plaintiff with a copy of her TransUnion credit report.  Upon review, Plaintiff was devastated to learn her credit report contained several fraudulent accounts, including a collection account being reported by Defendant as "Finl Accounts Svcs Team, Acct. No. 24104**" (hereinafter referred to as the "Account") since at least June 1, 2024.

33.    The Account was originally a Northland Communication account.  Plaintiff never had an account or service with Northland Communication and did not owe the Account being reported by Defendant.

34.    On or about July 31, 2025, Plaintiff sent a second dispute letter to TransUnion

("Second TransUnion Dispute").   In her letter, Plaintiff stated she had received TransUnion's Investigation Results and updated credit report. In her letter, Plaintiff again stated she had been the victim of identity theft and fraud. Plaintiff specifically disputed the Account and stated she had never had services with Northland Communication.  Plaintiff requested the Account be deleted from her credit report.  With her dispute, Plaintiff provided TransUnion a copy of the police report she filed regarding the theft of her identity and another copy of her driver's license.  TransUnion received Plaintiff's second dispute on August 5, 2025, and thereafter forwarded same to Defendant.

35.     On August 6, 2025, TransUnion sent Defendant an Automated Consumer Dispute Verification ("ACDV") informing Defendant that Plaintiff disputed the Account as true identity fraud, and account fraudulently opened.  TransUnion also informed Defendant that a police report had been provided.

36.     On August 20, 2025, Defendant, through its employee Tara Richburg, responded to TransUnion's ACDV by verifying each and every item linked to Plaintiff matched Defendant's records and the Account belonged to Plaintiff.  As a result of Defendant's actions, the Account continued to be reported on Plaintiff's TransUnion credit report as a collection account belonging to Plaintiff.

37.     On or about August 6, 2025, in response to Plaintiff's dispute and police report, TransUnion sent Plaintiff correspondence admitting it had received Plaintiff's request to block the Account due to fraud, but refusing to do so.

38.     On or about August 28, 2025, TransUnion sent Plaintiff its Investigation Results showing that the Defendant had verified the Account as accurate and updated the

"Historical Trended Data" information being reported. Accordingly, TransUnion continued reporting the derogatory, fraudulent Account as a collection account belonging to Plaintiff on her credit report.

39. On or about September 9, 2025, Plaintiff sent TransUnion a third dispute letter ("Third TransUnion Dispute") stating she had received TransUnion's Investigation Results and TransUnion's letter wherein TransUnion refused to block the reporting of the fraudulent Account. Plaintiff again requested that TransUnion remove the Account as it was fraudulent, and enclosed another copy of the police report she had filed and her driver's license. TransUnion received Plaintiff's third dispute on September 15, 2025, and thereafter forwarded same to Defendant.

40. On September 17, 2025, TransUnion sent Defendant an ACDV informing Defendant that Plaintiff disputed the Account as "True Identity Fraud," "Account fraudulently opened."

41. On October 4, 2025, Defendant, through its employee Tara Richburg, responded to TransUnion's ACDV and again verified the Account belonged to Plaintiff. As a result of Defendant's actions, the Account continued to be reported on Plaintiff's TransUnion credit report as a collection account on behalf of Northland Communication.

42. On or about September 17, 2025, TransUnion sent Plaintiff correspondence stating it had received Plaintiff's second fraud block request for the Account. Despite receipt of Plaintiff's valid police report, TransUnion again refused to block the fraudulent Account from Plaintiff's credit report.

43. On or about October 10, 2025, TransUnion sent Plaintiff Investigation Results

showing that Defendant had again verified the Account as accurate. Accordingly, despite repeated receipt of Plaintiff's dispute and a copy of her police report, TransUnion continued allowing Defendant to report the fraudulent Account as belonging to Plaintiff on her TransUnion credit reports.

44.    On November 17, 2025, TransUnion deleted the Account from Plaintiff's TransUnion credit report.

45.    From at least June 2024 through November 2025, Defendant knowingly and maliciously reported false, libelous, inaccurate, and defamatory information regarding the Plaintiff to TransUnion and to various third parties, including FebDestiny, Capital One, Credit Fresh Marketing, TBOM/Aspire, T-Mobile, Cap One Auto, The Hartford, Synovus/Verv-FirstDigital, OneMain Financial, Tab BankNetCredit, QuinStreet, Merrick Bank, and Tate and Kirlin Associates.

46.    Defendant received at least two (2) ACDVs from TransUnion, both of which included a copy of Plaintiff's police report. Defendant failed to reasonably investigate each of the ACDVs regarding Plaintiff's dispute.

47.    Defendant's 'knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-0952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
### (Fair Credit Reporting Act)

48.    The Plaintiff adopts the averments and allegations of paragraphs 13 through 47

9

hereinbefore as if fully set forth herein.

49.     Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information said Defendant had provided to a consumer reporting agency.

50.     Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

51.     Defendant negligently violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by the Defendant to the consumer reporting agencies.

52.     Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agencies.

53.     Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Account the subject of this action was inaccurate, incomplete, false, and misleading.

54.     The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

55.     Defendant completely failed and/or refused to conduct a detailed and searching inquiry as required by the FCRA.  Instead, Defendant simply verified the Account each and every time it received an ACDV regarding Plaintiff's dispute of the Account as fraudulent, even after Defendant received Plaintiff's police report, both directly and

indirectly from the Plaintiff through TransUnion credit reporting agency.

56.     As a result of Defendant's violations set forth above, the Plaintiff suffered damage to Plaintiff's credit score and credit reputation, severe and unrelenting anxiety, worry, inability to focus, constant racing thoughts, feeling a loss of control of her life, fear, loss of sleep, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish.  Additionally, the damage to Plaintiff's credit score and credit reputation caused her to not receive promotional offers of credit.  Plaintiff is entitled to actual damages in an amount to be determined by the jury.

57.     In addition, Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

58.     Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
### (Fair Credit Reporting Act)

59.     The Plaintiff adopts the averments and allegations of paragraphs 13 through 58 hereinbefore as if fully set forth herein.

60.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information Defendant had provided to a consumer reporting agency.

61.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

62.     Defendant willfully violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendant to a consumer

11

reporting agency.

63.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency.

64.     Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Account the subject of this action was inaccurate, incomplete, false, and misleading.

65.     The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

66.     Defendant willfully and intentionally failed and/or refused to conduct a detailed and searching inquiry as required by the FCRA.  Instead, Defendant simply verified the Account each and every time it received an ACDV regarding Plaintiff's dispute of the Account as fraudulent, even after Defendant received Plaintiff's police report.

67.     As a result of Defendant's violations set forth above, the Plaintiff suffered damage to Plaintiff's credit score and credit reputation, severe and unrelenting anxiety, worry, inability to focus, constant racing thoughts, feeling a loss of control of her life, fear, loss of sleep, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish.  Additionally, the damage to Plaintiff's credit score and credit reputation precluded her from receiving promotional offers of credit.  Plaintiff is entitled to actual damages in an amount to be determined by the jury.

68.    Due to Defendant's willful violations of the FCRA, Plaintiff's entitled to punitive damages in an amount to be determined by the jury.

69.    In addition, Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

70.    Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT THREE
### (Violation of the Fair Debt Collection Practices Act)

71.    Plaintiff hereby adopts all of the allegations set forth in paragraphs 13 through 70 as if set forth fully herein.

72.    Within the one year prior to the filing of this lawsuit, Defendant has engaged in collection activities and practices in violation of the Fair Debt Collection Practices Act with respect to the Plaintiff and an alleged consumer debt.

73.    Defendant is a debt collector as that term is defined in 15 U.S.C. 1692a(6) and is regularly engaged in the collection of debts.

74.    Defendant communicated to a person credit information which was known, or which should have been known to be false in violation of §1692e(8).   Specifically, Defendant reported to the Credit Reporting Agencies and other entities that Plaintiff owed a derogatory collection Account.

75.    As a proximate result of Defendant's actions, the Plaintiff was caused to suffer damage to her credit reports and reputation, worry, humiliation, fear, loss of sleep, anxiety, nervousness, loss of enjoyment of life, physical sickness, physical pain and mental anguish for which she seeks the maximum statutory damages, actual damages, plus attorneys' fees

and costs.

## COUNT FOUR
### (Defamation, Libel, and Slander)

76.    The Plaintiff adopts the averments and allegations of paragraphs 13 through 75 hereinbefore as if fully set forth herein.

77.    Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large.  Said statements harmed Plaintiff's reputation and caused Plaintiff physical sickness, mental anguish, and emotional distress.

78.    Said communications were false in that Plaintiff was not indebted to Defendant. Plaintiff did not owe any balance on the Account the subject of this action as said Account was clearly fraudulent.

79.    Defendant's false and defamatory statements have harmed the reputation of Plaintiff and/or deterred third persons from associating with Plaintiff.  Specifically, Defendant reported the Account to TransUnion credit reporting agency as belonging to Plaintiff so the Account would appear on Plaintiff's credit reports.  Plaintiff's credit reports were viewed by numerous third parties as set out above and Plaintiff suffered damages.

80.    Defendant communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including but not limited to reporting that Plaintiff owed the Account the subject of this action.

81.    At the time said communications were made, Defendant knew or should have

known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

82.     As a result of Defendant's intentional communications to third parties of the false information, Plaintiff was caused to suffer injury to her reputation in the eyes of her community and the public at large, and was forced to endure credit reporting of the Account in spite of the fact that Plaintiff did not owe the Account as it was fraudulently opened in her name without her knowledge or permission.

83.     As a proximate consequence of said defamation, libel and slander, Plaintiff was caused to have negative credit reports, to be held up to public ridicule or shame,  and made to suffer humiliation, anxiety, stress, headaches, loss of sleep, anger, worry, physical sickness, loss of enjoyment of life, and mental anguish for which she claims compensatory and punitive damages.

### **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.     Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1).

B.     Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.     Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.     For relief in amounts or other appropriate relief as may be determined by the Court pursuant to 15 U.S.C. §1692 to include the Plaintiff's actual damages, statutory

damages of one thousand ($1,000.00) dollars for Plaintiff, as well as attorney's fees and costs pursuant to 15 U.S.C. §1692 from Defendant;

E.      For compensatory and punitive damages in an amount to be determined by a struck jury for Defendant's defamation, libel and slander of Plaintiff;

F.      For this matter to be heard by a jury; and

G.      For such other and further relief as this Court deems necessary and proper.

/s/ *Penny Hays Cauley*
Penny Hays Cauley, Fed.  ID No.  10323
*Attorney for Plaintiff*

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com


**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Financial Accounts Service Team, Inc.
c/o Financial Accounts Service Team, Inc. – Registered Agent
8202 Kingston Pike
Knoxville, TN 37919

16